In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST Jill S. GILBERT, Attorney at Law.

BOARD OF ATTORNEYS PROFESSIONAL RESPONSIBILITY, Complainant-Respondent,

v.

Jill GILBERT, Respondent-Appellant.

Supreme Court

*No. 95–3561–D. Decided July 11, 2002.*

2002 WI 102

(Also reported in 647 N.W.2d 845.)

ATTORNEY reinstatement proceeding.

¶ 1. PER CURIAM. Jill Gilbert has filed a petition seeking reinstatement of her license to practice law in Wisconsin. We determine, based on the referee's report, the conditional recommendation of the Office of Lawyer Regulation (OLR), and the conditional recommendation of the Board of Bar Examiners (BBE), that Attorney Gilbert's license to practice law in this state shall be reinstated upon certain conditions as set forth herein.[1] We also remand this matter for a hearing on the advisability of expediting restitution payments to the client.

[1] Effective October 1, 2000, Wisconsin's attorney disciplinary process underwent a substantial restructuring. The name of the body responsible for investigating and prosecuting cases involving attorney misconduct was changed to the Office of Lawyer Regulation and the supreme court rules applicable to the lawyer regulation system were also revised. Since the conduct underlying this case arose prior to October 1, 2000, the body will hereafter be referred to as "the Board," however, all references to supreme court rules will be to those currently in effect unless otherwise noted.

¶ 2. Attorney Gilbert was admitted to the practice of law in Wisconsin in June 1992 and practiced in Milwaukee, Brookfield, and Cedarburg. In 1999 this court found Attorney Gilbert guilty of professional misconduct based on her representation of a vulnerable and elderly client over a six-month period. During this period she mishandled and misappropriated the client's funds. Specifically, her misconduct consisted of submitting bills to the client that contained misrepresentations and were fraudulent, misrepresenting her use of her client's funds to purchase a big screen television for herself, engaging in dishonesty, fraud, deceit or misrepresentation in videotaping what purported to be the client's execution of an agreement, charging the client and paying herself excessive and unreasonable fees from the client's funds, failing to act with reasonable diligence and promptness in handling the client's checking account, failing to keep the client reasonably informed of the status of his financial affairs and explain them to the extent reasonably necessary for him to make informed decisions, and depositing funds she claimed as fees into her client trust account and subsequently withdrawing a portion of those funds knowing there was a dispute about her entitlement to them. *In re Disciplinary Proceedings Against Gilbert*, 227 Wis. 2d 444, 595 N.W.2d 715 (1999).

¶ 3. The court suspended Attorney Gilbert's license for two years, commencing August 16, 1999, as discipline for her professional misconduct. *Id.* In addition, Attorney Gilbert was required to make restitution to the client within 60 days in the amount of $84,800, plus interest; to pay the costs of the disciplinary proceeding, which totaled $51,706.72; and to notify her clients of the suspension. *Id.* The court denied her motion for reconsideration on September 16, 1999.

313

¶ 4. Subsequently, Attorney Gilbert and the Board entered into an "Agreement Relating to Restitution Obligation" (Agreement) which extended the time Attorney Gilbert was allotted to make restitution to the client. On June 28, 2000, the suspension order was modified to reflect this Agreement.

¶ 5. On May 17, 2001, Attorney Gilbert filed this petition for reinstatement pursuant to SCR 22.28.[2]

¶ 6. The petition was assigned to Referee Michael Ash, consistent with the reinstatement procedure set forth in SCR 22.30.[3] Following a hearing on December 20, 2001, the referee issued a thorough and articulate

[2] SCR 22.28 provides: License reinstatement.

(1) An attorney suspended from the practice of law for nonpayment of state bar dues or failure to comply with continuing legal education requirements or the trust account certification requirement under SCR 20:1.15(g) shall be reinstated pursuant to the rules governing the suspension.

(2) The license of an attorney suspended for misconduct for less than six months shall be reinstated by the supreme court upon the filing of an affidavit with the director showing full compliance with all the terms and conditions of the order of suspension and the director's notification to the supreme court of the attorney's full compliance.

(3) The license of an attorney that is revoked or suspended for misconduct for six months or more shall be reinstated pursuant to the procedure set forth in SCR 22.29 to 22.33 and only by order of the supreme court.

[3] SCR 22.30 provides: Reinstatement procedure.

(1) The clerk of the supreme court shall select a referee from the panel provided in SCR 21.08, based on availability and geographic proximity to the petitioner's place of residence, and the chief justice shall appoint the referee to conduct a hearing on the petition for reinstatement. In the case of a license suspension, the hearing shall not be held prior to the expiration of the period of suspension.

report and recommendation on January 24, 2002, finding that Attorney Gilbert has "achieved a proper understanding and attitude toward standards imposed on bar members and is likely to act with conformity therewith."

¶ 7. However, the referee expressed grave concern about certain aspects of the Agreement, in particular, its effect on the aggrieved client, who was not a party to it. Whatever the reasons for its terms (which the parties dispute) the result of the Agreement is that Attorney Gilbert used all her available cash to fully reimburse the Board for its legal costs and expenses in the amount of $53,656.72, while restitution to the elderly and impoverished victim is being paid in monthly amounts ranging from $500 to $1000 at the rate of 5% over nine years. The referee added that he had continuing reservations stemming from "the dramatic incongruity between the very comfortable suburban lifestyle of Gilbert, who was found in effect to have wrongfully taken money from [the client] and [the client's] present impoverished and unhappy one." At the hearing the client testified that he is now beset with medical bills, strug-

---

(2) The director shall investigate the eligibility of the petitioner for reinstatement and file a response with the referee in support of or in opposition to the petition.

(3) At least 30 days prior to the hearing, the director shall publish a notice in a newspaper of general circulation in any county in which the petitioner maintained an office for the practice of law prior to suspension or revocation and in the county of the petitioner's residence during the suspension or revocation and in an official publication of the state bar of Wisconsin.

(4) The notice under sub. (3) shall contain a brief statement of the nature and date of suspension or revocation, the matters required to be proved for reinstatement, and the date, time and location of the hearing on the petition.

gling financially, and had to move from a condominium where he was happy to a small apartment in public housing.

¶ 8. The referee continued: "The lurking question is whether a just regulatory system should leave the parties so disproportionately situated and in particular whether Gilbert should be forced to pay or do more to make the situation right."[4]

¶ 9. Ultimately, however, the referee concluded that Attorney Gilbert has satisfied her burden of proof on the narrow question of reinstatement. She has satisfactorily addressed all the requirements of SCR 22.29(4),[5]

---

[4] As of the date of the referee's report, Attorney Gilbert owed the client approximately $66,000. She also owes the Wisconsin State Bar Client Security Fund (CSF) approximately $35,000. The CSF has waived subrogation so that Gilbert will pay the client in full before she must repay the CSF.

[5] SCR 22.29(4) provides:

(4) The petition for reinstatement shall show all of the following:

(a) The petitioner desires to have the petitioner's license reinstated.

(b) The petitioner has not practiced law during the period of suspension or revocation.

(c) The petitioner has complied fully with the terms of the order of suspension or revocation and will continue to comply with them until the petitioner's license is reinstated.

(d) The petitioner has maintained competence and learning in the law by attendance at identified educational activities.

(e) The petitioner's conduct since the suspension or revocation has been exemplary and above reproach.

## and she has demonstrated compliance with SCR 22.26.[6]

(f) The petitioner has a proper understanding of and attitude toward the standards that are imposed upon members of the bar and will act in conformity with the standards.

(g) The petitioner can safely be recommended to the legal profession, the courts and the public as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence and in general to aid in the administration of justice as a member of the bar and as an officer of the courts.

(h) The petitioner has fully complied with the requirements set forth in SCR 22.26.

(j) The petitioner's proposed use of the license if reinstated.

(k) A full description of all of the petitioner's business activities during the period of suspension or revocation.

(m) The petitioner has made restitution to or settled all claims of persons injured or harmed by petitioner's misconduct or, if not, the petitioner's explanation of the failure or inability to do so.

[6] SCR 22.26 provides: Activities following suspension or revocation.

(1) On or before the effective date of license suspension or revocation, an attorney whose license is suspended or revoked shall do all of the following:

(a) Notify by certified mail all clients being represented in pending matters of the suspension or revocation and of the attorney's consequent inability to act as an attorney following the effective date of the suspension or revocation.

(b) Advise the clients to seek legal advice of their choice elsewhere.

(c) Promptly provide written notification to the court or administrative agency and the attorney for each party in a matter pending before a court or administrative agency of the suspension or revocation and of the attorney's consequent inability to act as an attorney following the effective date of the suspension or revocation. The notice shall identify the successor attorney of the

*See* SCR 22.31(1).[7] Therefore, the referee recommended

attorney's client or, if there is none at the time notice is given, shall state the client's place of residence.

(d) Within the first 15 days after the effective date of suspension or revocation, make all arrangements for the temporary or permanent closing or winding up of the attorney's practice. The attorney may assist in having others take over clients' work in progress.

(e) Within 25 days after the effective date of suspension or revocation, file with the director an affidavit showing all of the following:

(i) Full compliance with the provisions of the suspension or revocation order and with the rules and procedures regarding the closing of the attorney's practice.

(ii) A list of all jurisdictions, including state, federal and administrative bodies, before which the attorney is admitted to practice.

(iii) A list of clients in all pending matters and a list of all matters pending before any court or administrative agency, together with the case number of each matter.

(f) Maintain records of the various steps taken under this rule in order that, in any subsequent proceeding instituted by or against the attorney, proof of compliance with the rule and with the suspension or revocation order is available.

(2) An attorney whose license to practice law is suspended or revoked or who is suspended from the practice of law may not engage in this state in the practice of law or in any law work activity customarily done by law students, law clerks, or other paralegal personnel, except that the attorney may engage in law related work in this state for a commercial employer itself not engaged in the practice of law.

(3) Proof of compliance with this rule is a condition precedent to reinstatement of the attorney's license to practice law.

[7] SCR 22.31(1) provides:

(1) The petitioner has the burden of demonstrating by clear, satisfactory and convincing evidence that the petitioner has the moral character to practice law in Wisconsin, that the petitioner's

318

that Attorney Gilbert's petition for reinstatement be granted, subject to imposition of certain conditions designed to induce the parties to revisit the Agreement and to encourage more rapid repayment of the restitution obligation. The conditions recommended by the referee are as follows:

1. Gilbert continuing to comply with the Agreement Relating to Restitution Obligation until such time as the agreement is amended. or modified.

2. Gilbert meeting with appropriate representatives of OLR within 18 months of her reinstatement to discuss, review, and negotiate in good faith possible modification of the agreement to provide for faster retirement of her restitution obligations;

3. Gilbert disclosing to OLR annually her income, assets, and net worth, including all W-2's, tax returns, financial statements, and other documentation, until such time as she has satisfied all her restitution obligations; and

4. Gilbert cooperating fully with any review of this matter that may be conducted by the Board of Administrative Oversight.

¶ 10. On February 4, 2002, OLR filed its response, stating that it does not oppose Attorney Gilbert's reinstatement, subject to the conditions recommended by the referee. By memorandum dated December 10, 2001, the BBE recommended that the reinstatement petition

resumption of the practice of law will not be detrimental to the administration of justice or subversive of the public interest, and that the petitioner has complied fully with the terms of the order of suspension or revocation and with the requirements of SCR 22.26.

be granted, subject to the requirement that she comply with the current continuing legal education (CLE) requirements by reporting an additional 30.0 approved hours, including 3.0 hours of legal ethics and professional responsibility; or by electing the exemption available at SCR 31.04(2) on the CLE Form 1 that will be due for the 2001–2002 reporting period.

¶ 11. This is a troubling matter and the court shares the referee's concerns. As the referee observed, on an institutional level this matter presents the following question: Where a respondent has resources insufficient to satisfy his or her financial obligation to both the Board and to clients who have been victimized, who should be paid first? We hold that the client should ordinarily be paid first in such situations. If there are reasons to depart from this general rule, they may be presented to the referee and decided on a case-by-case basis. Here the referee posited that perhaps the Board should be required to use all or some portion of the $51,656.72 it was paid to better the client's situation. However, both the referee and the Board noted that this matter is complicated by the concern that expediting repayment of the restitution award might not serve the client's best interests. The OLR urged that it should not be directed to pay the client unless the effect (and desirability) of the proposed disbursement is determined. Accordingly, we remand this matter for a hearing before Referee Michael Ash to ascertain the effect and desirability of expediting the restitution repayment. If the referee determines that the client requires an advocate to represent his interests in this proceeding, he shall so advise the court.

¶ 12. Ultimately, however, the court agrees with the referee's conclusion that our concerns about the Agreement should not preclude Attorney Gilbert's reinstatement, subject to the understanding that review of the circumstances leading to the Agreement may result in recommendations regarding possible modification of the Agreement.

¶ 13. We determine, based on the petition, the referee's report and recommendation, the conditional recommendation of the OLR, and the conditional recommendation of BBE, that Attorney Gilbert's license to practice law in this state shall be reinstated upon the following conditions:

1. Attorney Gilbert shall continue to comply with the Agreement Relating to Restitution Obligation until such time as the Agreement is amended or modified.

2. Attorney Gilbert shall meet with appropriate representatives of OLR within six months of her reinstatement and periodically thereafter to discuss, review, and negotiate in good faith possible modification of the Agreement to provide for faster retirement of her restitution obligations;

3. Attorney Gilbert shall disclose to OLR annually her income, assets, and net worth, including all W-2's, tax returns, financial statements, and other documentation, until such time as she has satisfied all her restitution obligations; and

4. Attorney Gilbert shall cooperate fully with any review of this matter that may be conducted by any entity appointed by the court to undertake such review.

¶ 14. IT IS ORDERED that this matter is remanded for a hearing before Referee Michael Ash to ascertain the effect and desirability, with respect to the client, of expediting the restitution repayment.

¶ 15. IT IS FURTHER ORDERED that the petition is granted and the license of Jill Gilbert to practice law in Wisconsin is reinstated effective the date of this order.

¶ 16. IT IS FURTHER ORDERED that the conditions set forth in this order, including compliance with the current CLE requirements, are imposed on the license of Jill Gilbert to practice law in Wisconsin.

¶ 17. JON P. WILCOX and DIANE S. SYKES, JJ., did not participate.