IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
David V. JENNINGS III, Attorney at Law:

BOARD OF ATTORNEYS PROFESSIONAL RESPONSIBILITY
n/k/a Office of Lawyer Regulation,
Complainant-Respondent,

v.

David V. JENNINGS III,
Respondent-Appellant.

Supreme Court

*No. 1992AP3208–D. Oral argument January 7, 2009.
—Decided March 24, 2009.*

2009 WI 26

(Also reported in 762 N.W.2d 648.)

For the respondent-appellant there were briefs by *David V. Jennings III, pro se,* Cedarburg, and oral argument by *David V. Jennings III.*

For the complainant-respondent there was a brief by *Keith L. Sellen* and *Office of Lawyer Regulation,* Madison, and oral argument by *Keith L. Sellen.*

¶ 1. PER CURIAM. David V. Jennings III has appealed a referee's report recommending the denial of Attorney Jennings' petition for reinstatement of his license to practice law in Wisconsin. We adopt the referee's report and conclude that Attorney Jennings has failed to demonstrate by clear, satisfactory, and convincing evidence that he has the moral character to practice law in Wisconsin; that his resumption of the practice of law will not be detrimental to the adminis-

tration of justice or subversive of the public interest; and that his conduct since revocation has been exemplary and above reproach, that he has a proper understanding of and attitude toward the standards that are imposed upon members of the bar and will act in conformity with the standards, and that he can safely be recommended as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence and in general to aid in the administration of justice as a member of the bar and as an officer of the courts. As a result, we deny Attorney Jennings' petition for reinstatement and direct him to pay the costs of this reinstatement proceeding.

¶ 2. Attorney Jennings was admitted to practice law in Wisconsin in 1975. In May 1986 he was appointed to represent Milwaukee Cheese and Sheboygan Sausage in chapter 11 bankruptcy proceedings. Between January 1989 and July 1992 Attorney Jennings embezzled approximately $550,000 from Milwaukee Cheese and Sheboygan Sausage bank accounts. He used the money for his lifestyle expenses. At the time, Attorney Jennings was a member of the law firm of Godfrey, Braun & Hayes in Ozaukee County.

¶ 3. At the same time he was embezzling funds from Milwaukee Cheese and Sheboygan Sausage, Attorney Jennings was also embezzling funds from his mother's living trust, of which he was the trustee. He embezzled between $85,000 and $100,000 from the trust.

¶ 4. On December 5, 1992, Attorney Jennings filed a petition for voluntary revocation of his license to practice law. In his petition, Attorney Jennings acknowledged that he could not successfully defend against allegations that he converted $550,000 from Milwaukee Cheese and Sheboygan Sausage. This court revoked

Attorney Jennings' law license in January 1993. *In re Disciplinary Proceedings Against Jennings*, 172 Wis. 2d 638, 493 N.W.2d 375 (1993).

¶ 5. In August of 1993, Attorney Jennings pled guilty and was convicted in U.S. District Court for the Eastern District of Wisconsin on two counts of embezzlement and two counts of making false entries in bankruptcy estates. He was sentenced to 27 months in prison followed by three years of supervised release. He was also ordered to make restitution payments of $590,200 in installment payments established by the probation office.

¶ 6. In 1998 the federal court revoked Attorney Jennings' probation due to his failure to make court-ordered restitution payments. He spent five days in jail and his probation term was extended for an additional 35 months.

¶ 7. After the discovery of his embezzlement, Attorney Jennings granted a mortgage on property he owned with his wife in favor of his parents. The mortgage favored Attorney Jennings' parents over other victims of his embezzlement and resulted in his parents receiving 43 cents on each dollar of debt while his former law firm, its insurance carrier, and Development Specialists, Inc. (DSI), received 28 cents on the dollar.

¶ 8. Following the revocation of his license but prior to his criminal conviction, Attorney Jennings' wife filed a petition to compel support and maintenance but did not seek a divorce or legal separation. In May 1993 the circuit court ordered Attorney Jennings to pay his wife $1,000 in maintenance and $510 in child support. Members of his law firm unsuccessfully sought to intervene in the action, as did Milwaukee Cheese, Sheboygan Sausage, and DSI.

¶ 9. While Attorney Jennings was incarcerated from 1993 through 1995, substantial arrearages of approximately $10,000 accrued in his support and maintenance payments. After he was released from prison, he began to make payments on the amounts due. He and his wife entered into a stipulation that reinstituted support payments that were slightly in excess of the 17 percent required under Wisconsin law for one child. These support payments served to shield more of Attorney Jennings' income from his creditors when he was released from prison since he had to make payments toward his current support and maintenance obligations as well as the arrearages that accrued during his incarceration.

¶ 10. The bulk of restitution to Milwaukee Cheese and Sheboygan Sausage has been paid by Attorney Jennings' former law firm, the firm's malpractice insurance carrier, and DSI, a company that engages in restructuring, consulting, insolvency workouts, and the provision of fiduciary services to bankruptcy courts. Milwaukee Cheese and Sheboygan Sausage commenced an adversary proceeding in bankruptcy court against Attorney Jennings, his former law firm, and each of its partners. DSI and Attorney Jennings' wife were subsequently added as third-party defendants. Attorney Jennings was ordered to pay $39,760 to the Employee Stock Ownership Trust of Milwaukee Cheese. As of March 2008 he still owed $10,310. Attorney Jennings reimbursed his former firm $152,520 and still owes it $397,680 plus interest. Of the funds he borrowed and embezzled from his mother, Attorney Jennings paid back approximately $46,000.

¶ 11. In May 2005 Attorney Jennings was cited for operating while under the influence of alcohol, first offense, in Ozaukee County. He entered a no contest

plea. In April 2006 his driver's license was suspended due to his failure to pay the forfeiture assessed as a result of the OWI conviction.

¶ 12.   On October 6, 1999, Attorney Jennings filed a petition for reinstatement of his law license. After an investigation conducted by the Board of Attorneys Professional Responsibility (BAPR), the predecessor to the OLR, and after a public hearing, Attorney Jennings asked to withdraw his petition. This court granted the request. On November 12, 2007, Attorney Jennings filed a second petition for reinstatement.

¶ 13.   The Honorable Timothy Vocke was appointed as referee. A hearing was held on June 19, 2008.

¶ 14.   A number of witnesses testified at the hearing, some in support of Attorney Jennings' petition and some against it. In addition, a number of other people submitted letters both opposing and supporting the reinstatement petition.

¶ 15.   Attorney Jennings testified that since 2000 he has been employed by the Furniture Clearance Center, a division of Porter Furniture Company, as a store manager; as part of that job, he has fiduciary responsibilities.

¶ 16.   At the close of the hearing, the referee issued his report and recommendation as part of the hearing transcript. The referee concluded that since 1992 Attorney Jennings has not engaged in the practice of law, has fully complied with the terms of the revocation order, and has maintained competence and learning in the law. The referee said the real question presented had to do with Attorney Jennings' moral character and whether or not the public was going to be injured by him resuming his license to practice law.

¶ 17.   The referee commented that Attorney Jennings was extremely bright, very hard-working, articu-

11

late, and capable of providing high-quality legal service. However, the referee concluded that Attorney Jennings lacked the "moral compass" necessary to practice law, and as a result, could not be safely recommended to the legal profession, the courts, and the public as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence and to aid in the administration of justice as a member of the bar and an officer of the courts.

¶ 18. The referee noted that Attorney Jennings stole approximately $550,000 and his victims included his mother as well as clients who were in bankruptcy. The referee noted the stolen money went for Attorney Jennings' personal benefit and activities such as skiing. The referee noted that Attorney Jennings' former law firm was still owed $397,000 and the president and CEO of DSI was owed $150,000 which he paid to Milwaukee Cheese and Sheboygan Sausage so that the creditors of those companies could get their money.

¶ 19. The referee also commented on the fact that in 1998, the U.S. District Court revoked Attorney Jennings' probation for failure to make court-ordered payments. As a result, Attorney Jennings spent five days in jail and received an additional 35 months probation.

¶ 20. The referee also noted there was a documented allegation that Attorney Jennings failed to cooperate with his probation or parole officer. In addition, the referee pointed to evidence that Attorney Jennings put his parents in a position of being preferred creditors over the other victims, and as late as 1998, Attorney Jennings maintained that the stolen funds had been loans that were not subject to income tax. Although the referee said he did not give much credence to the 2005 OWI conviction, he did find it

significant that Attorney Jennings' driver's license was later ordered suspended when he failed to pay the forfeiture of costs that arose from the OWI conviction.

¶ 21. Attorney Jennings has appealed, arguing that during the last ten years, he has done all the right things in order to be reinstated. He notes that this court has previously held that the inability to make full restitution should not preclude reinstatement. *See, e.g., In re Reinstatement of Gilbert*, 2002 WI 102, 255 Wis. 2d 311, 647 N.W.2d 845. The OLR asserts that the referee appropriately found that Attorney Jennings has failed to prove he has the moral character to practice law in Wisconsin.

¶ 22. This court will affirm a referee's findings of fact unless they are found to be clearly erroneous. Conclusions of law are reviewed de novo. *See In re Disciplinary Proceedings Against Carroll*, 2001 WI 130, ¶ 29, 248 Wis. 2d 662, 636 N.W.2d 718.

¶ 23. Supreme Court Rule 22.29(4) provides that a petition for reinstatement must show all of the following:

> (a) The petitioner desires to have the petitioner's license reinstated.

> (b) The petitioner has not practiced law during the period of suspension or revocation.

> (c) The petitioner has complied fully with the terms of the order of suspension or revocation and will continue to comply with them until the petitioner's license is reinstated.

> (d) The petitioner has maintained competence and learning in the law by attendance at identified educational activities.

13

(e) The petitioner's conduct since the suspension or revocation has been exemplary and above reproach.

(f) The petitioner has a proper understanding of and attitude toward the standards that are imposed upon members of the bar and will act in conformity with the standards.

(g) The petitioner can safely be recommended to the legal profession, the courts and the public as a person fit to be consulted by others and to represent them and otherwise act in matters of trust and confidence and in general to aid in the administration of justice as a member of the bar and as an officer of the courts.

(h) The petitioner has fully complied with the requirements set forth in SCR 22.26.

(j) The petitioner's proposed use of the license if reinstated.

(k) A full description of all of the petitioner's business activities during the period of suspension or revocation.

(4m) The petitioner has made restitution to or settled all claims of persons injured or harmed by petitioner's misconduct, including reimbursement to the Wisconsin lawyers' fund for client protection for all payments made from that fund, or, if not, the petitioner's explanation of the failure or inability to do so.

██

¶ 24.   Supreme Court Rule 22.31(1) provides that an attorney seeking reinstatement of his or her license has the burden of demonstrating all of these requirements by clear, satisfactory, and convincing evidence. We adopt the referee's findings and conclusions and

14

agree that Attorney Jennings has failed to meet his burden of demonstrating by clear, satisfactory, and convincing evidence that resuming the practice of law would not be detrimental to the administration of justice or subversive of the public interest.

¶ 25. We do not reach this decision lightly. It has been 16 years since Attorney Jennings agreed to the voluntary revocation of his license to practice law. Sixteen years is a long time. In the interim, Attorney Jennings has taken some significant steps to turn his life around and atone for his bad behavior. He has maintained steady employment. He has been making court-ordered restitution payments to the Employee Stock Ownership Trust of Milwaukee Cheese. He has attended legal educational programs to maintain competence and learning in the law. In spite of these positive steps, we are troubled, as was the referee, by the fact that Attorney Jennings' former law firm and the president and CEO of DSI are still owed large sums of money. We recognize that Attorney Jennings may lack the financial resources to ever make full restitution. What we find far more troubling than his failure to make restitution is his apparent failure not to have ever tried to determine exactly how much he owes his former law firm. When pressed on this issue at oral argument, Attorney Jennings first seemed to skirt the issue, and only when directly pressed on the subject did he admit that he has made no direct payments to his former law firm since 1997 and he did not know—and apparently never made a real effort to figure out—how much he owes the firm. This seeming failure to completely face up to his obligations gives us pause and tips the balance against granting the reinstatement petition.

¶ 26. The OLR has filed a statement of costs incurred in the reinstatement proceedings in the

amount of $6,967.14. We deem it appropriate to impose the full costs of this proceeding on Attorney Jennings.

¶ 27. IT IS ORDERED that David V. Jennings III's petition for reinstatement of his license to practice law in Wisconsin is denied.

¶ 28. IT IS FURTHER ORDERED that within 60 days of the date of this order, David V. Jennings III shall pay to the Office of Lawyer Regulation the costs of this reinstatement proceeding. If the costs are not paid within the time specified, and absent a showing to this court of his inability to pay the costs within that time, the license of David V. Jennings III to practice law in Wisconsin shall remain revoked under further order of this court.